UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| CINDY M. SEABOLT | ) | |
| | ) | |
| V. | ) | NO. 2:11-CV-229 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation following the administrative denial of her applications for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act following a hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 45 years of age at the time of the ALJ's decision. She has a bachelor of arts degree. She has past relevant work as a substitute teacher, an assistant Head Start teacher, and as a "collector" at a bank. She alleges disability commencing on December 19, 2007 due to fibromyalgia, obesity, gastroesophageal reflux disease, and mental impairments of dysthymia, generalized anxiety and depression.

Plaintiff has not appealed the ALJ's finding regarding her physical residual functional capacity ["RFC"], waiving further argument on this subject during the appellate process, her complaints of mental health issues were made almost exclusively to doctors treating her for physical ailments. Accordingly, the Court will include the entire medical history which is summarized in plaintiff's brief as follows:

> Dr. Ghaith Mitri treated Plaintiff from April 20, 2006 through July 11, 2006, due to muscle pain, insomnia, and fibrositis. Lab work showed elevated C-reactive protein and elevated sed rate erythrocyte and bilateral hand x-rays showed slightly prominent periarticular soft tissues around the proximal interphalangeal joints in some of the fingers (Tr. 228-249).
> Plaintiff received treatment at Seasons OB/GYN of Kingsport from May 3, 2007 through October 2, 2007, due to dyspareunia, irregular length of periods, hot flashes, and female stress incontinence. During this time, Plaintiff underwent laparoscopic supracervical hysterectomy and tension free vaginal tape with cystoscopy (Tr. 250-291).
> Plaintiff received treatment at Cornerstone Health Group from December 3, 2007 through July 23, 2008. Conditions and complaints addressed include fibromyalgia, heartburn and indigestion secondary to gastroesophageal reflux disease [hereinafter "GERD"], depression, obesity, insomnia, lumbago/back pain, muscle pain, joint pain, neck stiffness, bilateral arm pain, and anxiety (Tr. 292-301).
> On September 8, 2008, Plaintiff underwent consultative exam by Beth Ballard, M.A.

Plaintiff exhibited a predominantly flat affect with depressed mood and was initially tearful. Plaintiff reported that she has been depressed for a long time; that she is very tearful and cries easily; that she doesn't feel like doing anything and just stays in bed; that she has difficulty with her short-term memory; that she has no enjoyment in life; that she gets irritated and angry easily; that she is very nervous and easily distracted; and that she has no energy. The diagnoses were dysthymic disorder and anxiety disorder NOS. Ms. Ballard opined Plaintiff does not appear to be limited in her ability to understand and remember simple or detailed instructions; she does not appear to be limited in her ability to sustain concentration and persistence at an adequate level and to make simple work-related decisions; she is mildly limited in her ability to maintain age-appropriate social behavior; she is able to respond appropriately to changes in the work-setting and to be aware of normal hazards and take precautions; and she is unable to travel unaccompanied to unfamiliar places or use public transportation (Tr. 302-307).

Plaintiff underwent consultative exam by Dr. Uzzle on September 9, 2008. The handwritten notes are difficult to read and no diagnosis or opinion was offered by Dr. Uzzle (Tr. 308-313).

On September 24, 2008, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; and can sit for a total of about six hours in an eight-hour workday (Tr. 314-318). On October 7, 2008 and December 30, 2008, reviewing state agency psychologists opined Plaintiff does not have a severe mental impairment(s) (Tr. 319-329, 332-345).

Dr. James J. Hollandsworth treated Plaintiff from June 16, 2006 through February 2, 2007. Problems noted during this time include daily fibromyalgia pain, obesity, left elbow pain, chronic right upper extremity pain, and depression (Tr. 350-351, 254-255, 391-393).

Plaintiff continued treatment at Cornerstone Health Group from September 18, 2008 through November 19, 2008, during which time she was suffering fibromyalgia, GERD, neuropathy, depression, and fatigue (Tr. 394-399).

Plaintiff received treatment at Centerpointe Medical Clinic from March 11, 2009 through June 9, 2009. During this time, Plaintiff was suffering bilateral hand pain, bilateral arm pain, bilateral foot pain, depression, back pain, GERD, and fibromyalgia. Exams were remarkable for tenderness in the lumbar region, tenderness in the thoracic spine, tenderness in the hands, and decreased grip strength bilaterally (Tr. 412-413).

On August 13, 2009, Plaintiff presented to the Church Hill Free Clinic with complaints of depression and pain all over, with her hands and feet hurting the most. The diagnoses were depression, fibromyalgia, and possible rheumatoid arthritis (Tr. 417-420).

On September 25, 2009, Plaintiff underwent psychological evaluation by B. Wayne Lanthorn, Ph.D. Plaintiff's affect was mixed; it was evident that she was very anxious, on-edge, fidgety, and restless in her chair; she spoke in somewhat of a low monotone and appeared quite tired and restless; her overall mood was described as an agitated depression; she made numerous self-critical comments and had a very evidenced degree of poor self-esteem; she was able to persist at tasks and concentrate only with significant effort; at times, her thoughts appeared to be blocked and she had a difficult time articulating what she was attempting to respond to; she seemed to become easily

3

> confused by both interview and test questions; from short-term memory, after ten
> minutes, she was able to recall two out of five words presented to her earlier; she slowly
> but correctly performed Serial 7s; and she could spell the word "world" forwards but not
> backwards.
> WAIS-IV testing yielded a Full Scale IQ of 66, a Verbal Comprehension Index
> of 76, a Perceptual Reasoning Index of 71, a Working Memory Index of 66, and a
> Processing Speed Index of 71. The diagnoses were pain disorder associated with both
> psychological factors and general medical conditions, chronic; major depressive
> disorder, recurrent, moderate to severe; anxiety disorder with generalized anxiety due
> to chronic physical problems, pain, and resultant limitations; and borderline intellectual
> functioning; with a current global assessment of functioning [hereinafter "GAF"] of 50
> (Tr. 422-432).
> Dr. Lanthorn opined Plaintiff has no useful ability (poor/none) to deal with work
> stresses; understand, remember, and carry out detailed or complex job instructions;
> behave in an emotionally stable manner; relate predictably in social situations; or
> demonstrate reliability. Plaintiff's ability to function was noted to be seriously limited,
> but not precluded (fair) in the areas of follow work rules; relate to coworkers; deal with
> public; use judgment with the public; interact with supervisors; function independently;
> maintain attention and concentration; understand, remember, and carry out simple job
> instructions; and maintain personal appearance (Tr. 433-444).

[Doc. 11, pgs. 2-5].

At the administrative hearing, the ALJ left the record open at counsel's request to obtain the consultative examination by Dr. Lanthorn which counsel had scheduled.

With respect to the examination of the plaintiff by Beth Ballard, the Court would note in addition to the description of her evaluation by the plaintiff set forth above that plaintiff self-reported an inability to travel unaccompanied to unfamiliar places or to use public transportation. (Tr. 307). However, the plaintiff drove herself to the appointment with Ms. Ballard. (Tr. 303). In his hearing decision, the ALJ found that the plaintiff had severe impairments of obesity and fibromyalgia. (Tr. 19). He found that her gastroesophageal reflux disease was non-severe. He then evaluated her complaints of a mental impairment. He recounted the examination of the plaintiff's examination by Ms. Ballard which showed

4

only mild findings in all areas, and gave her opinion great weight. (Tr. 20).

He then discussed the report of Dr. Lanthorn. He noted that Dr. Lanthorn's Personality Assessment inventory indicated "there were subtle indications suggesting that the claimant may have tended to portray herself in a negative or pathological manner," but that Dr. Lanthorn felt "these did not rise to the level of distorting the overall clinical picture." The ALJ then noted that plaintiff "performed well on the mental status examination administered by Ms. Ballard." He then pointed out that plaintiff had a bachelor of arts degree with a 3.4 grade point average in college, and that yet Dr. Lanthorn's IQ test revealed a full-scale IQ of 66, with all of her IQ scores indicating borderline to extremely low average ranges of intellectual functioning. He noted a lack of treatment by any mental health source whatsoever, even though she saw other doctors regularly for her physical complaints, and that none of them had referred her for any mental treatment or even for an evaluation.

The ALJ then stated that "the claimant was referred to Dr. Lanthorn by her attorney. It is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in attempt to seek treatment for symptoms, but rather, through attorney referral in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be completely ignored." He then stated "Dr. Lanthorn's assessments are given little weight." (Tr. 20-21).

The ALJ then stated that he found the plaintiff's mental impairments to be non-severe. He found mild limitations in the plaintiff's activities of daily living; in her social functioning;

5

and in concentration persistence or pace. For each of these he relied upon the opinions of Ms. Ballard. He noted no evidence of instances of decompensation. (Tr. 21-22).

He then found that the plaintiff had the residual functional capacity for the full range of medium work with no non-exertional impairment. (Tr. 23). He then discussed the physical evidence, including the fact that no treating physician had suggested any physical limitations and the opinions of the state agency physicians. Since she could perform her past relevant work with that RFC, he found that she was not disabled. (Tr. 24-25).

Plaintiff asserts that the ALJ erred in not finding that she had a severe mental impairment. In that regard, she points out that proving the existence of severe impairment is a "de minimis hurdle" under Sixth Circuit case law, citing *Griffeth v. Commissioner of Social Security*, 217 F. App'x 425, 428 (6th Cir. 2007), and other cases and regulations. He states that the fact she has reported symptoms of depression and has been treated by her doctors for that condition shows a severe mental impairment. She also argues that because Dr. Lanthorn has a PhD in psychology, he is entitled to more weight than Senior Psychological Examiner Beth Ballard.

There is no doubt that establishing the existence of a severe impairment is a de minimis hurdle, and this Court has remanded many cases on just that basis. However, in this case there are two opinions by State Agency psychologists (Tr. 329 and 344) that the plaintiff has no severe impairment, and, more importantly, the hands-on examination of Ms. Ballard which showed no more than mild limitations (Tr. 306). It is true that plaintiff has received some treatment from her medical doctors for depression, none of whom stated in any treatment note that they suggested or arranged a referral of the plaintiff for treatment by a

6

mental health professional. However, as stated by the Commissioner, the Sixth Circuit has held "[t]he mere diagnosis [of a condition], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Arrayed against the opinions of the State Agency psychologists and Beth Ballard is the report and opinion of Dr. Lanthorn. It is, of course, true that Dr. Lanthorn was not a treating source, and did not see the plaintiff to treat her. As such, his opinion is entitled to no enhanced weight such as that required in the case of a treating source.

Nor does the Court believe that he is, as a clinical psychologist, afforded greater weight in a neutral setting than Ms. Ballard as a "senior psychological examiner." 20 CFR §§ 404.1513(a)(2) and 416.913(a)(2) define "licensed or certified psychologists" as "acceptable medical sources." Senior psychological examiners are required to be licenced under Tennessee law, and may practice without supervision in several areas, including "overall personality appraisal or classification, psychological testing, projective testing, [and] evaluations for disability or vocational disorders." Tennessee Code Annotated § 63-11-202(c)(2).

It is unfortunate that the ALJ made the comments about Dr. Lanthorn's opinions being suspect because he was retained by the plaintiff's attorney and was paid a fee for conducting the examination and writing his report. His reason for being involved in evaluating plaintiff is, of course, the mirror image of the reason Ms. Ballard became involved, and both were paid for their work. Were that the *sole* basis for him giving little weight to Dr. Lanthorn's opinion, the case would very likely be remanded. However, that being said, the ALJ cited other valid reasons for giving little weight to Dr. Lanthorn's assessment. Given the

7

plaintiff's performance and achievements in college, the benign conditions opined by Ms. Ballard, plaintiff's activities and her lack of any treatment or referral for same by any mental health profession, the ALJ stated adequate reasons as the finder of fact for rejecting Dr. Lanthorn's opinion regarding the severity of plaintiff's depression. Therefore, the opinion of Ms. Ballard and those of the State Agency examiners provided substantial evidence for the finding of no severe mental impairment.

There was substantial evidence for the ALJ's findings and for his ultimate determination that the plaintiff could perform the full range of medium work and could thus return to her past relevant occupations. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be GRANTED.[1]

Respectfully submitted:

s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).